# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DANIEL HERNANDEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 15-9929-JWL** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding the Administrative Law Judge's (ALJ) decision is not supported by the record evidence, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

## I.      Background

Plaintiff applied for DIB and SSI benefits, ultimately alleging disability beginning January 1, 2012. (R. 15, 40). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He argues that the ALJ erred in discounting the non-treating source medical opinion of Dr. Neufeld, the consultant psychologist who prepared reports of two examinations at the request of the state agency disability determination service; erred at step three in evaluating Listing 12.02, Organic Mental Disorders; and erred in his residual functional capacity (RFC) assessment regarding credibility and mental limitations.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

The court finds that the ALJ erroneously evaluated the medical opinions of Dr.

Neufeld.  Therefore, remand is necessary for a proper evaluation, and the court need not

consider Plaintiff's remaining allegations of error.  He can make arguments in that regard

to the Commissioner on remand.

## II.    Discussion

Plaintiff argues that the ALJ's stated rationale for discounting Dr. Neufeld's

opinions are not supported by medical authority (Pl. Br. 13-15), and that properly

understood, the evidence supports Dr. Neufeld's opinions.  Id. at 15-16.  The

Commissioner argues that the ALJ reasonably considered Dr. Neufeld's opinions.  She

argues that Dr. Neufeld concluded Plaintiff's psychological testing results were unreliable

because of Plaintiff's unclear, confusing, and contradictory responses and that Plaintiff's

performance at Dr. Neufeld's second evaluation suggested a more serious impairment

with unusual and unexplained variations in performance and Dr. Neufeld questioned

whether Plaintiff's deficits were the result of his head injury or of his substance abuse.

4

(Comm'r Br. 8-9).  She argues that the ALJ properly relied on Plaintiff's unclear, confusing, and contradictory statements to discount Dr. Neufeld's opinions, found that both Plaintiff's history of working after his head injury and the opinions of the state agency consultants are inconsistent with Dr. Neufeld's opinion that Plaintiff could not perform simple work, and found Dr. Neufeld's opinion is also inconsistent with Plaintiff's reports of significant daily activities.  Id. at 9-11.  The court agrees with Plaintiff that the ALJ's rationale are not supported by medical authority and finds that the ALJ did not reasonably discount Dr. Neufeld's opinion.

To demonstrate the error in the ALJ's evaluation, it is necessary to briefly summarize the record evidence regarding Plaintiff's severe mental impairments as determined by the ALJ--cognitive disorder, not otherwise specified, and cannabis dependence.  (R. 17).  The record is not absolutely clear, but there is evidence that Plaintiff repeated either kindergarten or the first grade, that he was given some special education classes and that he graduated from high school in 1978.  (R. 205, 418, 423, 433).  There is evidence of "alcohol addiction" and treatment in the past, and that Plaintiff continues to consume one to two beers every few weeks.  (R. 205, 418, 423, 433).  Plaintiff admitted weekend use of "speed" for ten years ending in the early 1990's, and stated that he began using cannabis when he was around 20 years old, and continues to use it near daily, or whenever he can get it.  (R. 418, 423).  Plaintiff's "cognitive disorder" apparently began or was aggravated at 35 years of age when he was struck in the head by a crane on May 13, 1995, resulting in temporal bone fracture, hospitalization

for three weeks, amnesia, extensive rehabilitation, and ear surgery to improve his hearing. (R. 204-05, 211, 432-33, 439). Plaintiff was able to return to work with restrictions in August 1995, but then was off work for a period of time after ear surgery, returning in January 1996. (R. 205, 433). Plaintiff's injury was determined to result in a 37% disability (R. 201), and his workers compensation claim was settled on April 6, 1998 in an agreement with a present value of approximately $35,000.00. (R. 197-200, 213-15).

Plaintiff's cognitive disorder was evaluated three times by two psychologists whose reports are contained in the administrative record--Dr. Swiercinsky, and Dr. Neufeld. (R. 204-12, 417-27, 432-40). Dr. Swiercinsky's report is the basis of much of the workers compensation settlement agreement, and is dated December 30, 1996. (R. 204-12, 432-40). Dr. Neufeld examined Plaintiff twice at the request of the state agency disability determination service and prepared a report of each examination. Dr. Neufeld's first report was dated September 26, 2012 and was based upon unidentified referral data from the disability determination service, a personal interview and mental status examination, and administration of the Wechsler Memory Scale, Fourth Edition psychological test. (R. 417). Plaintiff was again referred to Dr. Neufeld for further evaluation, and in his report dated March 18, 2013, Dr. Neufeld stated that he performed additional psychological testing, including the Wechsler Adult Intelligence Scale, Fourth Edition; another administration of the Wechsler Memory Scale, Fourth Edition; and the Trail Making Test, and conducted another personal interview and mental status examination. (R. 422). He stated that he based his second report on the unidentified

6

referral data from the disability determination service, the interview, mental status exam, and testing conducted on September 26, 2012, and the interview, mental status exam, and additional testing conducted on March 18, 2013.  Id.

The ALJ accorded Dr. Swiercinsky's opinion minimal weight because it was "a remote opinion and the claimant has performed substantial gainful activity since that time."  (R. 21).  With regard to the relative weighing of the medical opinions of Dr. Neufeld and of the state agency psychologists who provided their opinions after reviewing the record evidence, the court quotes the ALJ's analysis in its entirety:

> Dr. Neufeld opined the claimant might not be capable of performing simple instructions (Exhibit 3F [(R. 415-21)]).  However, this is inconsistent with neurological findings showing the claimant remains oriented.  Further, the claimant has worked in the past and currently performs household activities, does leather work, and drives.  Therefore, the undersigned affords the opinion minimal weight.  The State agency physicians noted the claimant was capable of performing simple work (Exhibit 2A/9A [(R. 66-77, 97-110)]).  This is consistent with the claimant's ability to work following his injury, minimal treatment, and current daily activities.  Therefore, the undersigned affords the opinion significant weight.

(R. 21).

As Plaintiff points out, the ALJ's discussion quoted above cites only Dr. Neufeld's first report and does not specify the weight accorded to Dr. Neufeld's second report, although it appears he accorded both reports the same weight.  And, as Plaintiff argues, the stated rationale for discounting Dr. Neufeld's opinions are not supported by medical authority.  The ALJ cites to no authority for the proposition that finding a person

"oriented" on a neurological examination suggests that he is able to understand and remember simple instructions.  And, the court is aware of no such authority.

In his first report, Dr. Neufeld acknowledged that Plaintiff "was generally alert and oriented" but also stated that Plaintiff's thought processes "were somewhat disorganized and unclear."  (R. 419).  He noted that Plaintiff performed in the "Impaired range for both Immediate and Delayed Memory," and "Auditory Memory was severely impaired."  Id. at 420.  Dr. Neufeld specifically stated, "the claimant's level of effort remained consistent and satisfactory for the duration of the exam.  Thus, the psychological test results are considered valid."  (R. 417).  Dr. Neufeld summarized his findings, in part:

> The mental status exam additionally revealed distractibility, attention, and concentration deficits, with his somewhat confusing and disorganized response style also suggestive of some form of cognitive difficulty.  The nature and severity of deficits revealed at the time of the present exam suggest that the claimant may not presently be capable of adequately 1) understanding and remembering simple instructions; 2) sustaining concentration, persistence and pace in a work setting; or 3) maintaining appropriate social interactions with coworkers, supervisors, and the general public.  It was unclear to this examiner to what extent such deficits might be attributable to a reported history of head injury and/or ongoing substance use.  His reported history of employment (e.g., with his most recent employment ending in December 2011) indicates that he has been capable of maintaining adequate functioning despite the effects of the 1995 injury, which suggests that ongoing substance use may play a prominent role in presently observed deficits.

(R. 421).

In his second report, Dr. Neufeld stated Plaintiff "was fully alert and oriented," but that Plaintiff had difficulty adequately expressing his ideas, and had significant areas of difficulty in attention and concentration.  (R. 425) (emphasis added).  He found that

Plaintiff's "overall intellectual functioning fell in the Impaired range," that all domains of memory functioning fell within the impaired range on the second testing, and that Plaintiff's performance on both Trails tests "fell well into the Impaired range," with the Trails B test "eventually terminated due to an apparent inability to proceed." (R. 426). Again, Dr. Nuefeld specifically stated, "the claimant's level of effort remained consistent and satisfactory for the duration of the exam. Thus, the psychological test results are considered valid." (R. 422). Once again he summarized his findings:

> Current test results revealed intellectual functioning in the Impaired range, with a notable weakness in terms of Working Memory. Memory testing revealed Impaired performance across all domains, with scores notably lower than at the time of the September 2012 exam. A test of sustained attention, concentration, and executive decision making also indicated serious deficits. Finally, it should be noted that the claimant's current performance on mental status exam tasks suggested more serious impairment than at the time of the previous exam, but with unusual and unexplained variations in performance (e.g., performing multiplication problems accurately with difficulties on division and subtraction, while previously only evidencing difficulties with multiplication, etc.). Again, however, effort appeared to remain adequate as best as could be determined by clinical judgment. If adequate effort is assumed, observed areas of difficulty represent some form of cognitive impairment that might relate to multiple factors including lifelong intellectual and/or learning deficits, a history of head injury, the effects of past/ongoing substance use, or some other form of cognitive dysfunction. Despite an unclear etiology, the nature and severity of currently observed deficits (e.g., severe impairment of attention, concentration, and memory; a degree of mental confusion; expressive language deficits; etc.) indicates that the claimant would not be capable of adequately 1) understanding and remembering simple instructions; 2) sustaining concentration, persistence and pace in a work setting; or 3) maintaining appropriate social interactions with coworkers, supervisors, and the general public.

(R. 427).

Dr. Neufeld, thus, explained how in his view as a psychological expert, Plaintiff was oriented, yet unable to understand and remember simple instructions.  The ALJ's mere assertion that being alert and oriented is inconsistent with finding an inability to understand and remember simple instructions is insufficient to discount Dr. Neufeld's opinion.  Moreover, Dr. Neufeld opined that Plaintiff is also unable to sustain concentration, persistence, or pace in a work setting, or to maintain appropriate social interactions.  (R. 421, 427).  The ALJ did not even address these limitations, either of which, if credited, would likely require finding disability.

The ALJ's suggestion that Dr. Neufeld's opinion is inconsistent with the fact that Plaintiff has worked in the past, ignores the facts of this case and assumes that neither Plaintiff's 1995 head injury might result in a deteriorating mental condition nor that Plaintiff's cannabis abuse might account for a deteriorating mental condition.  Once again, the ALJ cites to no authority, medical or otherwise which stands for the propositions inherently relied upon in his assumptions, and the court is aware of no such authority.  As quoted above, Dr. Neufeld recognized that Plaintiff had worked until 2011 and opined that fact "suggests that ongoing substance use may play a prominent role in presently observed deficits."  (R. 421).  And, in his second report Dr. Neufeld opined that the exact etiology for Plaintiff's observed deficits is unclear, but suggested that they might result from "multiple factors including lifelong intellectual and/or learning deficits, a history of head injury, the effects of past/ongoing substance use, or some other form of cognitive dysfunction."  (R. 427).

The ALJ's reliance on Plaintiff's current performance of household activities, leather work, and driving as a basis to discount Dr. Neufeld's opinion also fails, because the Tenth Circuit has long held that the "sporadic performance" of household tasks, working, or driving "does not establish that a person is capable of engaging in substantial gainful activity."  Frey v. Bowen, 816 F.2d 508, 516-17 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983)).  Similarly, the performance of such activities, therefore, cannot belie Dr. Neufeld's opinion that Plaintiff cannot understand and remember simple instructions.

The ALJ's determination to accord significant weight to the opinions of the state agency psychologists because they are "consistent with the claimant's ability to work following his injury, minimal treatment, and current daily activities" (R. 21), is merely the converse of his rationale for discounting Dr. Neufeld's opinions and must fail for the same reasons discussed above.

The court does not find that Dr. Neufeld's opinions must be accorded greater weight than the opinions of the state agency psychologists, but it does find that the rationale provided to discount Dr. Neufeld's opinions is not supported by the record evidence.  Remand is necessary to weigh the medical opinions properly.

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent herewith.

11

Dated this 30th day of November 2016, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**